MATTER OF CAMILLERI

In Exclusion Proceedings

A-22713513

*Decided by Board July 30, 1980*

A Canadian citizen truck driver employee (owner-operator) of a United States firm
seeking to deliver goods manufactured in Canada to a terminal in the United States
and to pick up goods to be delivered to points in Canada is admissible to the United
States as a nonimmigrant visitor for business under section 101(a)(15)(B) of the Act.
*Matter of Hira*, 11 I&N Dec. 824 (BIA 1965, 1966; A.G. 1966), distinguished.

EXCLUDABLE:
Order: Act of 1952 — Sec. 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant—no visa

ON BEHALF OF APPLICANT:
Robert E. McFarland, Esquire
999 W. Big Beaver Road, Suite 1002
Troy, Michigan 48084

ON BEHALF OF SERVICE:
Jim Tom Haynes, Esquire
Appellate Trial Attorney

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

This is an appeal from a December 4, 1979, decision of an immigration judge ordering that the applicant be excluded and deported. The appeal will be sustained and the applicant will be admitted to the United States as a nonimmigrant visitor for business.

The applicant is a 38-year-old married male alien, a native of Malta, and a naturalized citizen of Canada. He sought entry into the United States at Detroit, Michigan, on October 18, 1979, as a nonimmigrant visitor for business. The applicant is employed as a truck driver by Diamond Transportation System, Inc. (hereinafter referred to as Diamond). Diamond is a United States corporation with its headquarters in Racine, Wisconsin. Its business is that of an irregular route[1] motor carrier licensed to operate in the 48 states of the continental United States and all provinces of the country of Canada.

Diamond employs 235 owner-operators who are residents of the United States, and 12 Canadian owner-operators who reside in

[1] Irregular route denotes that Diamond's authority to transport goods is not limited to specified roadways.

Ontario. The Canadian owner-operators are not permitted to pick up loads in the United States for delivery to another point in the United States. They are only permitted to deliver loads across the international boundary or from point to point in Canada.

The applicant is a so called owner-operator for Diamond. As such he leases his 1977 model tractor, under a permanent lease agreement, to Diamond, and under the authority possessed by Diamond, the applicant drives the tractor pulling Diamond trailers normally transporting agricultural and construction equipment between Canada and the United States and the United States and Canada. The applicant is paid 64% of the gross Diamond receives for each load he hauls. He is paid in the United States in American dollars.

The applicant's home is in Brantford, Canada, which is approximately 170 miles east of Windsor, Ontario, a port of entry on the United States-Canadian border. The applicant maintains no other residence. He leaves for work from that address and returns to that address. That is where he parks his tractor when it is not in use. Major maintenance on the tractor is performed in Ontario and minor maintenance is performed by the applicant.

In pursuit of his employment, the applicant will normally depart from his home, pick up a load of agricultural or construction machinery at either Hamilton, Brantfort, Long Branch, or Toronto, Ontario. The facilities of major manufacturers of these commodities, including Massey-Ferguson, White Farm Equipment, and International Harvester Company, are located in those cities. The applicant then normally delivers his load of equipment to the Detroit agency terminal of Diamond.

The applicant drops his load at the Diamond facility, which involves putting the trailer into a line-up of incoming loads, unhooking the trailer, putting a dolly under the trailer, and pulling away from it. The applicant then hooks up to another load, chains it down, and delivers that load to a destination in Canada. It normally takes the applicant approximately two hours to unload, pick up the next load, and chain or secure it. The applicant never picks up a load in the United States and delivers it in the United States. The Diamond terminal near Detroit is located some 10 miles from the United States-Canadian border. In delivering loads to Canada, the applicant may travel to points as distant as 1400 miles from the United States-Canadian border.

The immigration judge found that the applicant is engaged in international trade which is contracted for by Diamond with companies in the United States and in Canada. He also found that the respondent resides in Canada, has no intention of abandoning his residence in Canada, or of remaining in the United States, and that his entries are of a temporary nature. The immigration judge found that the sole

442

issue presented in this case is whether the applicant is a bona fide nonimmigrant visitor for business.

The immigration judge observed that previous precedent decisions by the Board are difficult to reconcile. Some of them were cited both by the Service and the applicant for opposite propositions. The immigration judge based his decision on considerations set forth in *Matter of Hira*, 11 I&N Dec. 824 (BIA 1965, 1966; A.G. 1966). There we reiterated from *Matter of G—P—*, 4 I&N Dec. 217 (C.O. 1950), the following significant considerations:

1) There is a clear intent on the part of the alien applicant to continue the foreign residence and not abandon his existing domicile.
2) The principal place of business and the actual place of eventual accrual of profits, at least predominantly, remains in the foreign country.
3) While the business activity itself need not be temporary, and indeed may be long continued, the various entries into the United States made in the course thereof must be individually or separately of a plainly temporary nature in keeping with the existence of the two preceding considerations.

The immigration judge found that the applicant failed to meet the second test. He noted that the applicant was employed by a United States concern, that its primary business was conducted in the United States, that the profit accrued in the United States, and that the applicant's share of that profit was dispersed to him in the United States in American dollars.

On appeal, the applicant contends that he is a bona fide nonimmigrant visitor for business under previous Service policy and our own precedent decisions. He contends that as he is an owner-operator employee of a common carrier, the second consideration of the test is not critical as to him. We agree.[2]

We believe that the second contention set forth in *Matter of Hira, supra,* is not applicable to employees of common carriers who are engaged in international trade or commerce. Neither the immigration judge nor the Service has directed our attention to any case in which a truck driver engaged in international trade has been denied admission to the United States as a nonimmigrant visitor for business. On the contrary, *Matter of G—P—, supra,* indicates that such persons were routinely admitted into the United States for the purpose of loading or unloading commodities in this country as early as 1937. *See also Matter of Cote*, Interim Decision 2783 (BIA 1980); *Matter of W—*, 6 I&N Dec. 832 (BIA 1955); *Matter of R—*, 3 I&N Dec. 750 (BIA 1949).

Further, the applicant's employer has shown that the fact that it employs both United States and Canadian drivers has aided it in

---

[2] The applicant has made numerous contentions. However, as we find him to be admissible to the United States, we will address only those of his contentions which are necessary to our decision.

getting governmental approval for its operations in both the provinces of Canada and from the Interstate Commerce Commission. *Matter of Hira, supra,* does not preclude this type of arrangement. The second consideration of *Hira* is intended to insure that only applicants engaged in international business—as opposed to local employment—are admitted to the United States as nonimmigrant visitors for business. Two cases decided before *Hira* but after *Matter of G—P—,* illustrate the distinction. *Compare Matter of G—,* 6 I&N Dec. 255 (BIA 1954) (facts would appear to meet the considerations of *Matter of Hira, supra,* but applicant excluded on ground that the applicant was employed in the United States at a fixed and permanent place) with *Matter of W—, supra* (Canadian employee of United States firm admitted to deliver fish from Canada to his United States employer in Detroit).[3] There is no question as to the international character of the business in which the applicant is engaged. His business is the transportation of machinery, etc., across the international boundary.

We find that the applicant is engaged in "business" within the meaning of section 101(a)(15)(B) of the Act because the function he performs is a necessary incident to international trade. The transportation of commodities across the international boundary is an essential element of international trade. Although his trips are frequent, each is temporary for a business purpose, and after each, the applicant intends to return to Canada.

Accordingly, the applicant is admissible as a nonimmigrant visitor for business.

ORDER: The appeal is sustained, and the applicant is admitted to the United States.

---

[3] The fact that the Canadian citizen was paid in Canadian funds is considered to be of minimal significance.